Jacob Markowitz, J.
(dissenting). I dissent and would affirm. Plaintiff is the owner of certain premises in The Bronx. Some time in February of 1963, it received a letter signed by the Commissioner of Public Works stating as follows: “ The Department of Public Works as agent for the Department of Highways will soon let a contract for the laying of sidewalks and the grading and paving of Halleck ¡Street near the site of the New York City Terminal Market in the Hunts Point area of the Bronx. The complete cost of this work will be borne by the City of New York and will not be assessed against the abutting property owners.
“ The work will be done in accordance with the legal grade established for Halleck Street. Not all abutting properties are improved in accordance with the legally established grade. Where an abutting property is not improved in accordance with the established grade it will be necessary for the City’s contractor to enter temporarily on private property to cut or fill or both as the case may be. Since your property abuts on the sidewalk and street area where the work is to be done it will be necessary for the contractor to do the following work in the sidewalk area and within your property.
*168 ‘1 Block No. 2772 Lots Nos. 260 & 256: Sidewalk to be constructed at an elevation similar to that existing at the south end of the property and a maximum of 15" below the existing elevation in front of the open area and meeting the existing sidewalk on Oak Point Avenue. This will result in slopes in front of the open area approximately 2' to 3' within the property. Curb cuts and driveways in the sidewalk will be provided in accordance with the curb cut permits. A 5" step will occur at the northern doorway of the southernmost building. The sidewalk will be at virtually the same elevation as the bottom of the other doorway. All obstructions on your property, that may interfere with this work, such as fences, will be removed by the City’s contractor at no expense to the owner. Fences removed will be deposited at a location on the property designated by the owner.
“ There is enclosed an authorization which should be signed by you and returned to this office in the enclosed envelope. This authorization will facilitate the construction of the sidewalk and will permit the City’s contractor to enter upon your property for the purpose of carrying out the work outlined above. We would appreciate receiving the authorization as expeditiously as possible.”
Plaintiff gave the requested authorization and subsequently his property was entered upon and existing concrete ramps were ripped up. The city never replaced the portions of the existing sidewalk which had been broken up and removed, and did not install the sidewalk, as promised in the letter.
Some time in November of 1963 plaintiff was notified by the Department of Highways of the existence of a sidewalk violation and of his responsibility under the City Charter to correct the condition. The notice also advised plaintiff that, upon his failure to comply, the work would be done by the city and the cost will be a charge against the plaintiff.
On November 24, 1965, plaintiff’s attorney wrote the Department of Public Works, advising it of the previous agreement to replace the sidewalks in conformity with the new grading project, at no costs to the property owner. Several days thereafter, the Department replied that 1 ‘ we are prohibited by law from making any improvements in the sidewalk area since the law imposes this obligation upon the abutting property.”
Plaintiff thereupon had the sidewalk installed at the cost to itself of $2,250, and proceeded to sue the city.
It is the opinion of the majority that, since the City Charter places upon abutting owners the obligation of the construction of sidewalks (New York City Charter, § 230) and further *169 requires the city to enter into contracts with abutting owners for installation of sidewalks ‘1 upon such terms and conditions as may be approved by the board of estimate ” (subd. f), there having been no Board of Estimate approval, the contract is a nullity. It does not appear, however, that the agreement here in question was one requiring Board of Estimate approval. It was not as subdivision f describes a contract, ‘1 with the owners of premises abutting on streets for such installation, reconstruction, repaving or repair of sidewalks,” but rather an agreement to grant the city a license to invade private property for a grading job, the consideration for which would be replacement and installation of sidewalks. Taking as I do the position that this contract is one that does not require Board of Estimate approval, I consider the reference by the majority as to public letting not germane.
Accepting as authority McDonald v. Mayor (68 N. Y. 23, 27, supra), that it is incumbent upon “ those seeking to deal with a municipal corporation through its officials [to] take great care to learn the nature and extent of their power and authority,” nevertheless I am of the opinion that the agreement was not of such magnitude so as to render unreasonable the fact that plaintiff did not go beyond the ostensible authority which the Commissioner appeared to affect. This is not a situation dealing with a village board, town council or small municipality. To require the same inquiry with respect to a small matter of one dealing with a megalopolis places an unreasonable burden upon a taxpayer who had the right to rely on the Commissioner’s authority. Furthermore, considering the amount involved, to challenge the authority of the Commissioner would discourage reasonable co-operation with constituted authorities.
It is also defendant’s position that, if the sidewalk be considered consideration for the license, it must be deemed valueless consideration and therefore invalid under section 1 of article VIII of the State Constitution, which prohibits a city from giving money or property to a private party. In this regard, the city argues that the authorization by plaintiff to permit the city to come upon its property was of no value because the Commissioner had such right of entry without an authorization under the Administrative Code of the City of New York, and that, in any event, plaintiff did not prove that anybody connected with the City of New York entered plaintiff’s property.
Insofar as the former argument is concerned, the fact that a public corporation has some awesome power conferred by law does not estop it from seeking to obtain by private contractual means what it might otherwise obtain by flexing its sovereign *170 powers in a court action. The right of a city to condemn property does not preclude its right to privately contract to purchase property. In this instance it contracted for a license to enter land.
As for the second argument, the testimony at the trial and the inferences therefrom strongly indicate that contractors appeared on plaintiff’s premises pursuant to instructions by defendant.
As a contractual commitment was made by defendant city, it should be held accountable. Accordingly, the judgment of the trial court should be affirmed.
Street and Quiee, JJ., concur in opinion Per Curiam; Markowitz, J., dissents in memorandum.
Judgment reversed, etc.